## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**LASHIP, LLC**                                    **CIVIL ACTION**

**VERSUS**                                         **NO. 11-546**

**HAYWARD BAKER INC.**                             **SECTION: "G"(1)**

### ORDER AND REASONS

This litigation arises out of work that Hayward Baker, Inc. ("HBI") a contractor specializing in geotechnical planning and sub-surface construction, did for LaShip, LLC ("LaShip"), a company that designs and builds vessels, at LaShip's shipbuilding facility in Houma, Louisiana, and on adjacent property owned by the Terreborne Port Commission ("TPC"). LaShip and TPC allege that HBI's soil improvement and foundation work was defective, undermining the integrity of structures on the sites. LaShip and TPC bring causes of action for breach of contract, negligence, breach of implied duty of good and workmanlike performance, equitable estoppel/detrimental reliance, and unjust enrichment/quantum meruit.[1]

Before the Court is Defendant HBI's motion for partial summary judgment,[2] wherein HBI requests that the Court dismiss with prejudice:

(1)    The negligence claim asserted by the Terrebone Port Commission (the "TPC") because that claim has prescribed;

(2)    The TPC's "good and workmanlike performance" claim because there is no contract between the TPC and HBI;

(3)    The unjust enrichment claims asserted by the TPC and LaShip, L.L.C. ("LaShip") because, under Louisiana Civil Code article 2298, that claim is not available if the law provides another remedy;

---

[1] Rec. Doc. 118 at ¶¶ 56-77.

[2] Rec. Doc. 143.

(4)     The TPC's claims in their entirety and TPC from this suit because, in addition to the fact that the TPC has asserted no viable claims, the TPC lacks standing to recover damages associated with the allegedly necessary remediation of the project at issue in this case; and

(5)     LaShip's remaining claims to the extent that they seek damages related to Phase III of the project at issue in this case because LaShip has no evidence that HBI caused its alleged damages related to Phase III.[3]

After considering the pending motion, the memorandum in support, the opposition, the reply, the record, and the applicable law, the Court will grant the motion in part and deny the motion in part.

## I. Background

### A. Factual Background

Plaintiffs in this action are LaShip, a limited liability company in the business of designing and building vessels at its shipyard in Houma, Louisiana, and TPC, a political subdivision of the State of Louisiana, which is responsible for the continued development and day-to-day operations of the Port of Terrebonne (collectively, "Plaintiffs").[4] Defendant HBI is "an expert contractor that specializes in geotechnical planning, sub-surface construction, and/or soil preparation."[5]

Several years ago, LaShip engaged HBI to evaluate soil conditions and to plan and install hundreds of "soil mix" foundation columns at its shipyard.[6] This project consisted of three distinct phases: Phases I and III were to be completed at LaShip's shipyard, on property owned by LaShip. Phase II was to occur at a bulkhead through which vessels completed at LaShip's shipyard gained waterfront access; this property was owned by TPC and leased to LaShip.[7] Generally, the project

---

[3] Rec. Doc. 143-1 at pp. 1-2.

[4] Second Supplemental and Amended Complaint, Rec. Doc. 118 at ¶¶ 1-2.

[5] *Id.* at ¶ 3.

[6] *Id.* at ¶ 6.

[7] *Id.* at ¶ 7.

required soil improvements to add support to the load-bearing requirements of specific buildings to be constructed at LaShip's shipyard as part of Phases I and III, and to support loads at the bulkhead as part of Phase II.[8]

The parties agreed that prior to producing the soil-mixed columns for Phases I and III, HBI would conduct a two-part testing program.[9] Plaintiffs claim that the soil-mixed columns drilled as part of the testing for Phase I were improperly mixed and did not meet the specifications agreed upon.[10] Specifically, Plaintiffs allege that HBI enlisted a third party, McKinney Drilling ("McKinney") to aid it in this process. However, Plaintiffs aver that during the drilling of test columns for Phase I, HBI and/or McKinney "recognized that portions of the soil mixed columns had not cured and were collapsing in areas that should have solidified."[11] Instead of stopping the test program and investigating the problem, Plaintiffs contend that HBI "negligently forced the rebar cages into the collapsing test columns and poured the cement into the partially collapsed shafts."[12] Thereafter, HBI and McKinney approved the tests and moved into production of columns to be used as foundational support for buildings.[13] Plaintiffs claim that throughout the production stage, HBI created "passable" samples that were intended to mask the alleged deficiencies in the soil.[14]

During this process, HBI installed 156 six-foot soil-mixed columns for Phase I, but according

---

[8] *Id.* at ¶ 8.

[9] *Id.* at ¶ 22.

[10] *Id.* at ¶ 28.

[11] *Id.* at ¶¶ 29-31.

[12] *Id.* at ¶ 32.

[13] *Id.* at ¶ 33.

[14] *See id.* at ¶¶ 34-38.

to Plaintiffs, it was immediately apparent that the columns were not curing as anticipated.[15] In response to these problems, Plaintiffs claim that HBI abandoned the 156 columns, and continued production using eight-foot columns instead, but still using the same mixture.[16] LaShip argues that it was improperly charged for the "useless" 156 six-foot columns, and for the increased cost of the eight-foot columns.

Turning to Phases II and III, Plaintiffs claim that the testing procedure that was "negligently performed by HBI" during Phase I also "created the false impression that the soil-mixture was meeting [specifications] at all three Phases of the Project."[17] Plaintiffs allege that "the in-place production columns constructed by HBI for all three phases of the Project were improperly mixed, were not constructed in accordance with the specifications outlined in the various contracts, and/or are otherwise subject to premature failure."[18]

Plaintiffs bring causes of action for breach of contract, negligence, and breach of implied duty of workmanlike performance.[19] In the alternative, Plaintiffs bring causes of action for "equitable estoppel/detrimental reliance" and "unjust enrichment/quantum meruit."[20]

**B. Procedural Background**

Plaintiff LaShip initially filed this action in state court, and HBI filed a Notice of Removal on the basis of diversity on March 9, 2011.[21] The case was initially allotted to Section I of this

---

[15] *Id.* at  ¶¶ 38-39.

[16] *Id.* at ¶ 44.

[17] *Id.* at ¶ 51.

[18] *Id.* at ¶53.

[19] *See id.* at ¶¶ 56-68.

[20] *See id.* at ¶¶ 69-77.

[21] Rec. Doc. 1.

Court,[22] but on October 11, 2011, this case was transferred to Section G as part of a new docket.[23] On December 4, 2012, LaShip requested a status conference with the Court to discus the growing nature and complexity of this suit.[24] At that status conference, held on December 18, 2012, the Court ordered that the parties submit a joint testing protocol, in order to ensure the timely progression of this matter; the Court also agreed to continue the trial to October 28, 2013 and issued a new scheduling order.[25]

At a subsequent February 6, 2013 status conference, the Court informed HBI that in the Notice of Removal it had not properly alleged the citizenship of LaShip as a limited liability company, and gave HBI leave to file an amended notice of removal, which it did on February 11, 2013.[26] On March 6, 2013, with leave of court, LaShip, now joined by TPC, filed a Second Supplemental and Amended Complaint.[27]

On September 10, 2013, HBI filed the pending motion for partial summary judgment.[28] Plaintiffs filed their opposition on September 17, 2013.[29] With leave of the Court, HBI filed a reply

---

[22] *Id.*

[23] Rec. Doc. 23.

[24] Rec. Doc. 97.

[25] Rec. Doc. 100; Rec. Doc. 101; Rec. Doc. 103.

[26] Rec. Doc. 110; Rec. Doc. 111.

[27] Rec. Doc. 118. The Court notes that this pleading improperly states the citizenship of LaShip as "a Louisiana limited liability company with its principal place of business in the Parish of Terrebonne, State of Louisiana." *Id.* at ¶ 1. However, as this Court previously instructed the parties, the citizenship of a limited liability company is determined by the citizenship of each of its members. Rec. Doc. 110; *Harvey v. Grey Wold Drilling Co.*, 542 F.3d 1077, 1079-80 (5th Cir. 2008). However, the Court acknowledges that HBI's Amended Notice of Removal does properly allege the citizenship of LaShip and demonstrates the existence of complete diversity. *See* Rec. Doc. 111.

[28] Rec. Doc. 143.

[29] Rec. Doc. 145.

in further support of its motion on September 26, 2013.[30]

## II. Parties' Arguments

### A. TPC's Negligence Claim

#### 1. Defendant's Argument in Support of Summary Judgment

HBI asserts that a delictual, or tort, action is subject to a liberative prescription of one year, which commences to run from the day injury or damage is sustained.[31] However, HBI acknowledges that the doctrine of *contra non valentum* "applies to prevent the running of prescription until a 'cause of action is . . . known or reasonably knowable by the plaintiff.'"[32]

According to HBI, HBI completed its work on Phase II before the end of 2010, but TPC did not file suit until March 6, 2013.[33] HBI avers that TPC "first knew or should have known in November 2011 the very facts that plaintiff and their expert, Peter Nicholson, have urged are evidence that HBI's work was defective."[34] Specifically, in November 2011, a piece of construction equipment fell into a hole in the surface of the ground near the bulkhead.[35]

#### 2. Plaintiffs' Argument in Opposition of Summary Judgment

TPC acknowledges that it "joined this lawsuit more than one year after HBI finished its work on Phase II of the Project."[36] However, TPC contends that it "did not know that it had a potential

---

[30] Rec. Doc. 152.

[31] Rec. Doc. 143-1 at p. 6.

[32] *Id.* at p. 6 (quoting *Corsey v. State, through Dep't of Corr.*, 375 So.2d 1319, 1322 (La. 1979)).

[33] *Id.*

[34] *Id.* at pp. 6-7.

[35] *Id.* at p. 7.

[36] Rec. Doc. 145 at p. 2.

cause of action against HBI until January 2013,"[37] when TPC's Executive Director "participated in a telephone call with representatives of LaShip where [he] was notified for the first time that the circumstances leading to litigation surrounding Phase I of the facility may extend to Phase II—the property owned by the Terrebone Port Commission."[38] Furthermore, Plaintiff asserts that although Peter Nicholson may have become aware of problems with the Phase II foundation in November 2011, "at that time, Mr. Nicholson was not employed or engaged in any way by the Port," and there is no evidence that "Mr. Nicolson conveyed his concerns to anyone at the Port."[39]

### 3. Defendant's Reply in Support of Summary Judgment

In reply, HBI contends that the doctrine of *contra non valentum* should not operate to protect TPC because TPC "should have known" about its alleged injury at least more than a year prior to filing suit.[40] Citing the Louisiana Supreme Court in *Corsey v. State, through Department of Corrections*, HBI argues that "a plaintiff will be deemed to know what he could by reasonable diligence have learned."[41] According to HBI, "'reasonably diligence' would require TPC to have known about a hole in its property large enough for an excavator to have fallen into it" in November 2011.[42] Furthermore, HBI avers that TPC, as a political subdivision with statutory responsibilities to manage its property, "reasonably should have known of its Phase II claims when LaShip filed suit

---

[37] *Id.* at p. 3.

[38] Rec. Doc. 145-1, "Declaration of David Rabalais," at ¶ 9.

[39] Rec. Doc. 145 at p. 3.

[40] Rec. Doc. 152 at p. 2.

[41] *Id.* (quoting *Corsey*, 375 So.2d at 1322).

[42] *Id.* at p. 3.

at the very least."[43]

### B. TPC's "Good and Workmanlike Performance Claim"

#### 1. Defendant's Argument in Support of Summary Judgment

According to HBI, Louisiana courts have interpreted Article 2769 of the Louisiana Civil Code "to mean that in every construction contract the contractor must perform the work in a good, workmanlike manner, free from defects attributable to faulty materials or poor workmanship."[44] Looking to the "language of the article" and "its position within the Civil Code," HBI argues that "it is clear that a valid contract is a prerequisite to the article's applicability."[45] HBI therefore contends that TPC's claim for breach of an implied duty of good and workmanlike performance "must be dismissed with prejudice because it is undisputed that there is no contract between the TPC and HBI."[46]

#### 2. Plaintiffs' Argument in Opposition of Summary Judgment

In their opposition, TPC and LaShip "concede[] that the Port has no cognizable claim against HBI for breach of workmanlike performance under La. C.C. art. 2769 " because TPC did not execute a contract with HBI.[47]

---

[43] *Id.*

[44] Rec. Doc. 143-1 at p. 8 (quoting *Villars v. Edwards*, 412 So.2d 122, 126 (La. Ct. App. 1982)).

[45] *Id.* (quoting *Villars v. Edwards*, 412 So.2d at 126).

[46] *Id.*

[47] Rec. Doc. 145 at p. 1.

### C. LaShip's and TPC's Unjust Enrichment Claims

#### 1. Defendant's Argument in Support of Summary Judgment

HBI contends that pursuant to Louisiana Civil Code Article 2298, the remedy of unjust enrichment "shall not be available if the law provides another remedy."[48] Accordingly, HBI argues that "neither TPC nor LaShip can recover damages through unjust enrichment claims because both parties have pled negligence and other claims against HBI."[49] Furthermore, citing the Louisiana Supreme Court in *Walters v. MedSouth Record Management, LLC*, HBI asserts that "it is irrelevant that the TPC's negligence claim has prescribed,"[50] as HBI argues elsewhere in its motion.[51]

#### 2. Plaintiffs' Argument in Opposition of Summary Judgment

Plaintiffs "do[] not dispute the general legal precepts in HBI's motion regarding the availability of unjust enrichment as a cause of action."[52] However, they aver that those precepts are not applicable here. Specifically, LaShip and TPC argue that HBI "has taken the incredible position that its contractual obligation was limited to installing roughly 10% of the foundation columns to a specified 100 psi strength,"[53] and that therefore the contract did not require that the other 90% be installed to certain specifications.[54] Plaintiffs argue that if HBI is correct in its interpretation then

---

[48] Rec. Doc. 143-1 at p. 8 (quoting *Walters v. MedSouth Record Mgmt., LLC*, 2010-0353 (La. 6/4/10); 38 So.3d 241, 242).

[49] *Id.* at p. 9.

[50] *Id.* (citing *Walters*, 38 So.3d at 242).

[51] *See id.* at pp. 6-7.

[52] Rec. Doc. 145 at p. 3.

[53] *Id.* at p. 4.

[54] *Id.*

LaShip may not have a claim sounding in contract for 90% of the columns.[55] Plaintiffs maintain that "unjust enrichment is subsidiary in nature and would not apply if the law provides another remedy."[56]

### 3. Defendant's Reply in Support of Summary Judgment

In response, HBI asserts that LaShip and TPC misstate its position with respect to 90% of the columns, but contends that "the plaintiffs' argument in this regard as it pertains to their unjust enrichment claims is a red herring."[57] According to HBI, Plaintiffs "offer no authority for why the basic, Louisiana Civil Code-based rule that unjust enrichment is not available as a theory of recovery when a party has other causes of action available does not apply in this case."[58] HBI argues that LaShip has asserted breach of contract, negligence, and breach of implied duty of workmanlike performance claims, while TPC has asserted a negligence claim, even if that claim is prescribed.[59] Thus, HBI concludes, unjust enrichment is not available to LaShip or TPC.[60]

### D. TPC's Standing to Recover Damages

#### 1. Defendant's Argument in Support of Summary Judgment

HBI asserts that in order for a plaintiff to have standing such that a federal district court has subject matter jurisdiction over the case "**the plaintiff must have suffered an injury in fact**."[61]

---

[55] *Id.* at p. 6.

[56] *Id.* at p. 5.

[57] Rec. Doc. 152 at p. 4.

[58] *Id.*

[59] *Id.* at pp. 4-5.

[60] *Id.* at p. 5.

[61] Rec. Doc. 143-1 at p. 10 (quoting *Williams v. Fid. Nat'l Ins. Co.*, No. 07-4428, 2009 WL 2922310, at *2 (E.D. La. Sept. 8, 2009) (Lemelle, J.)) (emphasis in original).

According to HBI, "the TPC should be dismissed from this case because it has not suffered any damages and, accordingly, lacks standing."[62] HBI argues that pursuant to the lease between TPC and LaShip, LaShip is "'liable for the cost and expenses for the performance' of any and all repairs made to the bulkhead."[63] Therefore, HBI reasons, "[t]he TPC plainly lacks standing to recover those damages because LaShip is ultimately liable to the TPC for all costs of the remedial work."[64]

### 2. Plaintiffs' Argument in Opposition of Summary Judgment

In opposition, TPC asserts that the lease agreement cited by HBI is not "competent summary judgment evidence" because "[p]roper summary judgment evidence includes affidavits, declarations, depositions, answers to interrogatories, and admissions on file."[65] TPC characterizes the lease agreement as a "loose document."[66]

Alternatively, TPC argues that "whether or not the Port has sustained compensable damages is a genuinely contested fact."[67] In support of this position, Plaintiff point out that "the Port is the record owner of the bulkhead/Phase II," that "the Port has asserted in its complaint that it has suffered damages," and that "it is undetermined between LaShip and the Port who ultimately bears responsibility for remediation of the Port property."[68]

---

[62] *Id.* at p. 11.

[63] *Id.* at p. 11 (quoting Rec. Doc. 143-4, "Lease Agreement," at p. 4).

[64] *Id.*

[65] Rec. Doc. 145 at p. 6.

[66] *Id.*

[67] *Id.*

[68] *Id.*

*3. Defendant's Reply in Support of Summary Judgment*

In reply, HBI asserts that the lease agreement is proper evidence for summary judgment as there is "clear law in the Fifth Circuit and other federal circuit courts of appeals that documents produced by a party in discovery are authentic for summary judgment purposes."[69]

Turning to LaShip's and TPC's other arguments, HBI contends that in saying that "it is undetermined between LaShip and the Port who ultimately bears responsibility for remediation of the Port property,"[70] the Plaintiffs improperly "assert their refusal to identify the true party in interest as an issue of material fact preventing summary judgment in favor of HBI."[71] HBI further avers that "TPC has produced no evidence (and has not even taken the position) that it bears any responsibility for the costs associated with the remediation of the bulkhead . . . and the TPC has produced no evidence that it has or will incur any of the damages it is claiming."[72]

**E. LaShip's Claim for Damages Related to Phase III**

*1. Defendant's Argument in Support of Summary Judgment*

HBI contends that "LaShip has no evidence that its claimed damages on Phase III of the Project were caused by HBI's allegedly defective work"[73] and that "[w]ithout any evidence of causation, HBI is entitled to summary judgment dismissing LaShip's claims with prejudice to the extent that they seek any damages related to Phase III of the Project."[74] In support of this argument,

---

[69] Rec. Doc. 152 at p. 5.

[70] *Id.* (citing Rec. Doc. 145 at p. 6).

[71] *Id.*

[72] *Id.*

[73] Rec. Doc. 143-1 at p. 12.

[74] *Id.*

HBI points to the deposition testimony of Peter Nicholson, an expert retained by LaShip. First, HBI quotes Nicholson as saying that "he was 'not able to complete a statistically significant sampling'" with respect to Phase III.[75] Furthermore, HBI claims that Nicholson "admitted in his deposition that he does not actually know whether HBI's Phase III work requires any remediation and, thus, is defective."[76]

### 2. Plaintiffs' Argument in Opposition of Summary Judgment

In opposition, LaShip avers that "whether or not there is sufficient evidence of HBI-caused damages in connection with Phase III is a contested, material fact."[77] According to Plaintiff, HBI mischaracterizes Nicholson's testimony, and LaShip asserts that Nicholson "merely stated that he did not have sufficient ***core data***."[78] Furthermore, Plaintiff asserts that Nicholson's testimony is not the only evidence of causation.[79] Specifically, LaShip contends that "LaShip did conduct core sampling of some of the Phase III columns and that those cores demonstrate a 50% failure rate."[80] Plaintiff further maintains that "LaShip core sampled 114 foundation columns on the Project—the vast majority of which failed to achieve the specified standards."[81] LaShip also points out that "the steel skins of the building in Phase III have been moving" and that the windows have been "popping out," among other problems.[82] Finally, LaShip argues that "HBI has presented no evidence to

---

[75] *Id.* (quoting Rec. Doc. 143-3, Deposition of Peter Nicholson, taken Aug. 21, 2013, at p. 8).

[76] *Id.*

[77] Rec. Doc. 145 at p. 7.

[78] *Id.* (emphasis in original).

[79] *Id.*

[80] *Id.* at pp. 7-8.

[81] *Id.* at p. 8.

[82] *Id.*

suggest that the process it utilized for the columns at Phase I differed from the process it utilized for the columns at Phases II and III."[83]

### 3. Defendant's Reply in Support of Summary Judgment

In response to Plaintiffs, HBI cites deposition testimony from Nicholson in which he:

. . . plainly testified that, based on the evidence obtained regarding HBI's work on Phase I of the project, he <u>assumes</u> that HBI's Phase III work is defective but does not have enough information on Phase III <u>at this point in time</u> (less than two months before trial) to conclude that the plaintiffs' damages on Phase III were and are being caused by HBI's allegedly defective work.[84]

HBI maintains that "any analyses of Phases II and III must stand on their own because they were different projects and built differently."[85] HBI avers that LaShip's theory of Phase III causation rests on "assumptions" which are "not competent evidence on summary judgment at trial."[86]

## III. Standard on Summary Judgment

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[87] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[88] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of

---

[83] *Id.*

[84] Rec. Doc. 152 at p. 8 (emphasis in original).

[85] *Id.* at p. 9.

[86] *Id.*

[87] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[88] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

law' are insufficient to either support or defeat a motion for summary judgment."[89] If the record, as a whole, could not lead a rational trier of fact to find for the non-moving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[90]

The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record, which it believes demonstrate the absence of a genuine issue of material fact.[91] If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[92] The nonmoving party can then defeat the motion for summary judgment by either countering with sufficient evidence of its own or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[93] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[94]

---

[89] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[90] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[91] *Celotex*, 477 U.S. at 323.

[92] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991).

[93] *Id.* at 1265.

[94] *See, e.g.*, *Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

### IV. Law and Analysis

*A. Applicable Law*

      This Court's subject matter jurisdiction here was invoked pursuant to 28 U.S.C. § 1332, which provides original jurisdiction over civil actions between citizens of different states where the matter in controversy exceeds $75,000. As a federal court exercising diversity jurisdiction, it is "axiomatic" that this Court must apply Louisiana law to resolve matters of substantive law presented in the pending motion and "attempt to discern how Louisiana's highest court would resolve the issues at hand."[95] Although that doctrine is equally applicable when a federal court is "[a]ddressing an unsettled area of Louisiana law," federal courts should "avoid creating new rights and remedies in Louisiana state law where [the court] lack[s] express statutory authority or clear directive from the Louisiana Supreme Court."[96]

*B. TPC's Negligence Claim*

      A delictual obligation arises from the "intentional or negligent causing of damages" to another in the absence of a contract.[97] The parties do not dispute that the allegations relevant to TPC's negligence claim against HBI are considered delictual. Under the Louisiana Code of Civil Procedure, "[d]elictual actions are subject to a liberative prescription of one year,"[98] and for damage caused to immovable property, "the one year prescription commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage."[99]

      Although Article 3467 of the Louisiana Civil Code provides that "prescription runs against

---

[95]*In re Whitaker Const. Co. Inc.*, 411 F.3d 209, 209 n.4 (5th Cir. 2005) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). The parties do not dispute that the insurance policy is governed by Louisiana law.

[96]*Id.*

[97] *Hostetler v. Gary & Co., Inc.*, 523 So.2d 1359, 1368 (La. App. 2 Cir. 1988).

[98] La. Civ. Code art. 3492.

[99] La. Civ. Code art. 3493.

all persons unless exception is established by legislation,"[100] the Louisiana Supreme Court applies the doctrine of *contra non valentum* to prevent the running of the liberative prescription in four scenarios:

>    (1)    where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
>
>    (2)    where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
>
>    (3)    where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or
>
>    (4)    where the cause of action is neither known nor reasonably known by the plaintiff even though plaintiff's ignorance is not induced by the defendant.[101]

In cases involving property damages, the Louisiana Supreme Court has explained that "the fourth category of *contra non valentem*, otherwise known as the 'discovery rule,' is encompassed in the prescriptive period proscribed by La. C.C. art. 3493, as both essentially suspend prescription until the plaintiff knew, or reasonably should have known of the damage."[102] Accordingly, "the substantive analysis is the same under both La. C.C. art. 3493 and the discovery rule of *contra non valentum*."

The Louisiana Supreme Court instructs that "the doctrine of *contra non valentem* applies only in 'exceptional circumstances.'"[103] In this manner, the doctrine will not prevent the running of prescription if the plaintiff's ignorance of his claim is "attributable to his own wilfulness or neglect;

---

[100] La. Civ. Code art. 3467.

[101] *Marin v. Exxon Mobil Corp.*, 2009-2368 (La. 10/19/10); 48 So.3d 234, 245 (2010) (citing *Plaquemines Parish Com'n Council v. Delta Development Co., Inc.*, 502 So.2d 1034 (La. 1987)).

[102] *Id.*

[103] *Id.* (quoting *Renfoe v. State ex rel. Dept. of Transp. and Dev.*, 01-1646 (La. 2/26/02); 809 So.2d 947, 953)).

17

that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned."[104] With respect to claims for property damage, "knowledge sufficient to start the running of prescription 'is the acquisition of sufficient information, which, if pursued, will lead to the true condition of things.'"[105] This date has been found to be the date that the damage becomes apparent.[106] The "ultimate issue" in determining whether a plaintiff had constructive knowledge sufficient to commence a prescriptive period is "the reasonableness of the plaintiff's action or inaction in light of his education, intelligence, and the nature of the defendant's conduct."[107]

As for the burden of proof, generally, when an action is filed more than a year after the alleged incident, the cause of action has prescribed on its face and "the plaintiff carries the burden of proving that prescription was interrupted, suspended or renounced."[108] However, the Louisiana Supreme Court has explained that "this traditional allocation of the burden of proof is altered somewhat when prescription is raised through a motion for summary judgment."[109] In this situation, the movant must prove "that there is no genuine material factual issue in dispute regarding the date upon which the plaintiffs acquired actual or constructive knowledge of the damage sufficient to commence the running of prescription."[110]

The parties do not dispute that TPC filed suit more than one year after HBI completed its

---

[104] *Id.* at 246.

[105] *Id.* (quoting *Young v. Int'l Paper Co.*, 155 So. 231 (La. 1934)).

[106] *Id.*

[107] *Id.*; *cf. Campo v. Correa*, 2001-2707 (La. 6/21/02); 828 So.2d 502, 511 (explaining that in a medical malpractice case, "the ultimate issue is the *reasonableness* of the patient's action or inaction, in light of his education, intelligence, the severity of the symptoms, and the nature of the defendant's conduct").

[108] *Gary v. Camden Fire Ins. Co.*, 96-0055 (La. 7/2/96); 676 So.2d 553, 555.

[109] *Hogg v. Chevron USA, Inc.*, 2009-2632 (La. 7/6/10); 45 So.3d 991, 998.

[110] *Id.*

work on Phase II.[111] Thus, the relevant issue for the Court is when TPC "knew, or reasonably should have known of the damage" such that the claim would begin to prescribe. As mentioned above, HBI, as the movant, has the burden of showing that there is no genuine material factual issue in dispute regarding the date upon which TPC had actual or constructive knowledge.

The Court finds that HBI has not met this burden. Although HBI contends that construction equipment falling into a hole in its property in November 2011 should have alerted TPC to problems with Phase II, Plaintiffs are correct that HBI has not put forth any evidence that this event was ever transmitted to TPC.[112] Furthermore, while HBI asserts that TPC should have been aware of its claims when LaShip filed suit, the Court notes that LaShip's suit initially concerned Phase I, an entirely separate portion of the project.[113] Indeed, Plaintiffs have provided a declaration from TPC's Executive Director that it was not until January 2013 when TPC "participated in a telephone call with representatives of LaShip where [it] was notified for the first time that the circumstances leading to litigation surrounding Phase I of the facility may extend to Phase II—the property owned by the Terrebone Port Commission."[114] Therefore, the Court finds that there is a genuine issue of material fact as to when TPC should have known about its potential claims, rendering summary judgment on the basis of prescription inappropriate.

## C. TPC's Good and Workmanlike Performance Claim

Louisiana Civil Code Article 2769 provides that "[i]f an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do

---

[111] *See* Rec. Doc. 143-1 at p. 6; (stating that HBI finished its work before the end of 2011 and that TPC did not file suit until March 2013); Rec. Doc. 145 at p. 2 (acknowledging that TPC "joined this lawsuit more than one year after HBI finished its work on Phase II of the Project").

[112] *See* Rec. Doc. 145 at p. 3.

[113] *See* Rec. Doc. 1-2, LaShip's state court Petition for Damages.

[114] Rec. Doc. 145-1, "Declaration of David Rabalais," at ¶ 9.

it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract." Interpreting this provision, Louisiana Courts have explained that "[i]t is implicit in every construction contract that the work of the [contractor] is to be performed in a good, workmanlike manner free from defects attributable to either faulty materials or poor workmanship."[115] However, Article 2769 only applies if there is a valid contract between the parties.[116]

The parties do not dispute that there was no contract between TPC and HBI.[117] Therefore, TPC cannot recover on its good and workmanlike performance claim, and summary judgment on this issue is granted.

### D. LaShip's and TPC's Unjust Enrichment Claims

The Louisiana Supreme Court has identified the requisite elements of a claim for unjust enrichment as: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) an absence of justification or cause for the enrichment and impoverishment; and (5) no other remedy at law.[118] Consistent with this case law, the Louisiana Civil Code states in no uncertain terms that unjust enrichment "is subsidiary and shall not be available if the law provides another remedy for the impoverishment."[119]

If a plaintiff has a remedy under tort law, then he may not bring a claim for unjust enrichment. In *Walters v. MedSouth Record Management, LLC*, the Louisiana Supreme Court characterized unjust enrichment as "only available to fill a gap in the law where no express remedy

---

[115] *Calcon, Inc. v. Young Companies, Inc.*, 322 So.883, 886 (La. Ct. App. 1975); *see also Melancon v. Tri-Dyne Tele-Pier, LLC*, 11-1055 (La. App. 5 Cir. 5/31/2012); 95 So.3d 576, 581.

[116] *See Villars*, 412 So.2d at 126 ("[F]rom the language of the article as well as from its position with the Civil Code, it is clear that a valid contract is a prerequisite to the article's applicability.").

[117] *See* Rec. Doc. 145-6 at p. 3.

[118] *Baker v. Maclay Props. Co.*, 94-1529 (La. 1/17/95); 648 So. 2d 888, 897 .

[119] La. Civ. Code art. 2298.

20

is provided."[120] In that case, plaintiff had initially claimed that his alleged injuries were caused by negligent and tortious conduct on the part of the defendant; the plaintiff only claimed unjust enrichment after the trial court had dismissed his tort claims as prescribed. The Louisiana Supreme Court held plaintiff could not recover for unjust enrichment, reasoning that "[h]aving pled a delictual action, we find plaintiff is precluded from seeking to recover under unjust enrichment."[121] The court also held that it was of "no moment" that the plaintiff's tort claim had prescribed because "[t]he mere fact that a plaintiff does not successfully pursue another remedy does not give the plaintiff the right to recover under the theory of unjust enrichment."[122] In this manner, the Louisiana Supreme Court found that because the law provided the plaintiff with another remedy, the plaintiff had failed to state a cause of action for unjust enrichment.[123]

Similarly, Louisiana courts have recognized that where a contract exists, there can be no recovery in quantum meruit under a theory of unjust enrichment.[124] That is, where parties have contracted, "the contract is the law between them," and the Courts will not allow an equitable remedy.[125]

In this case, LaShip has remedies in contract law, and it has asserted claims for breach of contract,[126] and breach of implied duty of good and workmanlike performance.[127] Furthermore, both

---

[120] *Walters* 38 So.3d at 242 (quoting *Mouton v. State*, 525 So. 2d 1136, 1142 (La. App. 1 Cir. 1988)).

[121] *Id.*

[122] *Id.*

[123] *Id.* at 244-45.

[124] *Miller v. Housing Auth. of New* Orleans, 190 So.2d 75, 81 (La. 1966) ("Our Code makes it clear that the equitable doctrine of unjust enrichment can apply only where the parties have not contracted in regard to a matter."); *see also Bramburg Steel Buildings, Inc. v. Lawrence General Corp.*, 36,500 (La. App. 2 Cir. 5/8/02); 917 So.2d 427, 438.

[125] *Miller*, 190 So.2d at 81.

[126] Rec. Doc. 118 at ¶¶ 56, 61.

[127] *Id.* at ¶¶ 63-68.

LaShip and TPC have a remedy in tort law, and they have brought delictual actions for negligence.[128] The Louisiana Civil Code and the Louisiana Supreme Court are clear that a plaintiff cannot recover under unjust enrichment if it has another remedy. Because LaShip and TPC have remedies sounding in tort and contract, summary judgment in favor of HBI on plaintiffs' unjust enrichment claims is granted.

### E. TPC's Standing to Recover Damages

Article III, Section 2 of the Constitution restricts the federal "judicial Power" to the resolution of "Cases" and "Controversies." That case-or-controversy requirement is satisfied only where a plaintiff has standing.[129] In order to have Article III standing a plaintiff must establish:

> (1) an injury in fact (i.e., a 'concrete and particularized' invasion of a 'legally protected interest'); (2) causation (i.e., a 'fairly . . . . trace[able]' connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., that it is 'likely' and not 'merely speculative' that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit').[130]

It is fundamental that injuries to rights recognized at common law (or analogous rights under civil law), such as property, contract, and torts, are sufficient for Article III standing.[131]

That a plaintiff can recover compensation from sources other than the defendant does not necessarily defeat standing. Under the "collateral source rule," a doctrine of common law origin that is recognized by Louisiana courts, a "tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution."[132] Although the collateral source rule arises most

---

[128] *Id.* at ¶62.

[129] *Lujan v. Defenders of Wildlife*, 504 U.S. 55, 560 (1992).

[130] *Sprint Commc'n Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269, 273 (2008).

[131] *See* Erwin Chemerinsky, *Federal Jurisdiction* 59 (6th ed. 2012).

[132] *Bozeman v. State*, 2003-1016 (La. 7/2/04); 879 So.2d 692, 697; *see also* Restatement (Second) of Torts § 920A (1979).

frequently in insurance cases, Louisiana courts have explained that its relevance is not confined to such matters; the rule is generally applicable to torts where payments or compensation are at issue.[133] Where the rule applies, a plaintiff's injury vis-a-vis the defendant is unaffected by outside compensation.

In this case, HBI contends that TPC lacks standing because pursuant to the lease agreement between LaShip and TPC, LaShip "'is liable for the costs and expenses for the performance' of any and all repairs made to the bulkhead, 'including without limitation . . . [repairs made] in connection with the structural integrity' of the bulkhead."[134] In their briefs, neither party has directly addressed whether the collateral source rule applies. However, the Court notes that it appears that the rule may allow TPC to recover damages from HBI even though the lease agreement between TPC and LaShip makes LaShip liable for repairs to the bulkhead. If the collateral source rule applies, any compensation for repairs that TPC receives from LaShip could be considered "monies received by

---

[133] *Bozeman*, 879 So.2d at 697. *Bozeman* notes that although at least forty-four states have statutorily modified the collateral source rule, "the Louisiana Legislature has declined to make any statutory changes to the rule." *Id.*

Louisiana courts have held that the collateral source rule applies not only where the plaintiff directly purchased insurance against which the plaintiff recovered, but also where there have been Medicare payments, *Womack v. Travelers Insurance Co.*, 258 So.2d 562 (La. Ct. App. 1972); sick leave and annual leave payments, *Dunlap v. Armendariz*, 265 So.2d 352 (La. Ct. App. 1972); retirement pension payments, *Adam v. Schultz*, 250 So.2d 811 (La. Ct. App. 1971); free medical services rendered as a professional courtesy, *Spizer v. Dixie Brewing Co.*, 210 So.2d 528 (La. Ct. App. 1968); Federal Social Security Benefits, *Doerle v. State*, 147 So.2d 776 (La. Ct. App. 1962); free medical care rendered by the Veteran's Administration, *Fullilove v. U.S. Casualty Co. of N.Y.*, 129 So.2d 816 (La. Ct. App. 1961); and suits brought under the Jones Act and Longshoremen's and Harbor Worker's Compensation Act, *Tipton v. Socony Mobil Oil Co.*, 375 U.S. 34, 84 S.Ct. 1, 11 L.Ed.2d 4 (1963). In *Bourque v. Diamond M. Drilling Co.*, the Fifth Circuit held that an employer tortfeasor could not violate the collateral source rule by applying as a set-off workmen's compensation benefits received by the former employee from another employer. 623 F.2d 351 (5th Cir. 1980).

The Court notes that while widely applicable to tort actions, the collateral source rule does not always apply to contract actions. *See Metoyer v. Auto Club Family Ins. Co.*, 536 F. Supp. 664, 667-70 (E.D. La. 2008) (Barbier, J.) (noting that the collateral source rule is generally not used in breach of contract cases but also recognizing that there is no "blanket prohibition" on the rule in the contracts context). However, TPC's claim is for negligence, a matter of tort law, and not for breach of contract.

[134] Rec. Doc. 143-1 at p. 11.

the plaintiff from sources independent of the tortfeasor's procuration or contribution."[135] In such a case, HBI would be precluded from such benefit, and TPC's recovery would not be reduced because of the agreement between TPC and LaShip.[136]

Because the Court finds that there is a genuine dispute as to material fact regarding TPC's ability to recover pursuant to the collateral source rule, summary judgment on the issue of standing is denied.[137]

### F. LaShip's Claim for Damages Related to Phase III

After considering summary judgment on LaShip's unjust enrichment claim, LaShip's remaining claims with respect to Phase III are for breach of contract, negligence, breach of implied duty of good and workmanlike performance, and equitable estoppel/detrimental reliance. The parties do not dispute that all of these claims require that the injury to the LaShip be caused by the HBI. Rather, they disagree on whether there is a genuine dispute as to any material fact with respect to causation.

As this is a motion for summary judgment, all reasonable inferences are drawn in favor of the nonmoving party, LaShip, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[138] If the record, as a whole, could not lead a rational trier of fact to find for the non-moving party, then no genuine issue of fact exists and the HBI as the moving party is entitled

---

[135] *Bozeman*, 879 So.2d at 697.

[136] *Id.*

[137] Because the Court finds that the potential applicability of the collateral source rule renders summary judgment inappropriate, it is unnecessary to address Plaintiffs' argument that the lease agreement is not proper evidence for summary judgment at this time.

[138] *Galindo*, 754 F.2d at 1216; *Little*, 37 F.3d at 1075.

to judgment as a matter of law.[139]

As the party seeking summary judgment, HBI bears the initial responsibility of informing the Court of the basis for its motion, and identifying those portions of the record, which it believes demonstrate the absence of a genuine issue of material fact. Here, HBI has met this initial burden. HBI points to specific testimony from LaShip's expert, Peter Nicholson, in which he admitted to not having "sufficient information" to conclude that the observed settlement on Phase III of the Project was caused by defective soil mix columns installed by HBI.[140] Also citing LaShip's expert, HBI asserts that the expert was "not able to complete a statistically significant sampling."[141]

Although HBI met its initial burden, LaShip has countered with sufficient evidence of its own. LaShip points to a report prepared by Nicholson in which he reported that sampling of six soil cores demonstrated a 50% failure rate "due to deficient soil mixing by HBI."[142] Additionally, LaShip asserts that at the Phase III site, "the steel skins of the building were moving with respect to the floor of the building," and that "the windows of both buildings were popping out and bending due to this movement." Furthermore, LaShip notes Nicholson's report where it states that "[t]he middle of the floor, currently used as a storage area has bowl shaped depression in the middle of it, again approximately 8" deep."[143]

As the Supreme Court has instructed, at the summary judgment stage, it is not the Court's function to weigh the evidence and determine the truth of the matter.[144] Here, LaShip's expert has

---

[139] *Matsushita Elec. Indus.*, 475 U.S. at 586.

[140] Rec. Doc. 143-3, Deposition of Peter Nicholson, taken Aug. 21, 2013, at p. 9.

[141] *Id.* at p. 8.

[142] Rec. Doc. 143-2, Report of Peter Nicholson, Nicholson Consulting Co., dated June 21, 2013, at p. 18; *see also* Rec. Doc. 145 at pp. 7-8.

[143] Rec. Doc. 143-2, Report of Peter Nicholson, Nicholson Consulting Co., dated June 21, 2013, at p. 18; *see also* Rec. Doc. 145 at p. 8.

[144] *See Anderson*, 477 U.S. at 249.

opined that HBI's soil columns were defective and resulted in settlement in Phase III; however, there is a question of how much weight to give to this conclusion given the expert's sample size. In sum, there is a genuine dispute concerning the material fact of whether HBI's soil columns in Phase III were defective, and it is not proper at this juncture for the Court to weigh the evidence. Summary judgement with respect to LaShip's Phase III claims is denied.

## V. Conclusion

The Court finds that there is a genuine dispute as to material fact regarding whether TPC's negligence claim is prescribed, whether TPC lacks standing, and whether LaShip is entitled to damages related to Phase III. However, for the reasons explained above, summary judgment is appropriate with respect to LaShip's and TPC's claims for unjust enrichment and TPC's claim for good and workmanlike performance. Accordingly,

**IT IS HEREBY ORDERED** that Defendant HBI's Motion for Partial Summary Judgment with respect to Plaintiff TPC's negligence claim is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant HBI's Motion for Partial Summary Judgment with respect to Plaintiff TPC's good and workmanlike performance claim is **GRANTED** and that Plaintiff TPC's good and workmanlike performance claim is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendant HBI's Motion for Partial Summary Judgment with respect to Plaintiff LaShip's unjust enrichment claim is **GRANTED** and that Plaintiff LaShip's unjust enrichment claim is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Defendant HBI's Motion for Partial Summary Judgment with respect to Plaintiff TPC's unjust enrichment claim is **GRANTED** and that Plaintiff TPC's unjust enrichment claim is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Defendant HBI's Motion for Partial Summary Judgment

with respect to dismissing TPC's claims in their entirety due to lack of standing is **DENIED**.

      **IT IS FURTHER ORDERED** that Defendant HBI's Motion for Partial Summary Judgment

with respect to LaShip's Phase III claims for damages related to Phase III is **DENIED.**

      **NEW ORLEANS, LOUISIANA**, this <u>22nd</u> day of October, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

27