# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**LASHIP, LLC, et al.**                                    **CIVIL ACTION**

**VERSUS**                                                 **NO. 11-0546**

**HAYWARD BAKER, INC.**                                    **SECTION: "G"(1)**

## ORDER AND REASONS

This litigation arises out of work that Hayward Baker, Inc. ("HBI" or "Defendant"), a contractor specializing in geotechnical planning and sub-surface construction, did for LaShip, L.L.C. ("LaShip"), a company that designs and builds vessels, at LaShip's shipbuilding facility in Houma, Louisiana, and on adjacent property owned by the Terrebonne Port Commission ("TPC"). LaShip and TPC (collectively, "Plaintiffs") allege that HBI's soil improvement and foundation work was defective, undermining the integrity of structures on the sites. LaShip and TPC bring causes of action for breach of contract, negligence, breach of implied duty of good and workmanlike performance, and equitable estoppel/detrimental reliance.[1]

Before the Court is Defendant's motion to strike certain testimony given by Plaintiffs' witness Joseph Waxse, who was designated as a Rule 26(a)(2)(C) witness (an expert who was not required to produce a report) prior to trial and was the subject of a motion *in limine*. The motion at issue here was made orally at trial on November 1, 2013. The Court has considered the applicable law, the record, and the parties' briefs, and for the reasons that follow; Defendant's motion is granted.

---

[1] Rec. Doc. 118 at ¶¶ 56-77. The Plaintiffs' unjust enrichment claims, as well as TPC's claim for good and workmanlike performance, have been dismissed. *See* Rec. Doc. 193.

## I. Background

In its prior Orders, the Court has discussed the alleged facts underlying the litigation between Plaintiffs LaShip and TPC and Defendant HBI, and the Court will not revisit those allegations here.[2] The information that follows is specific to the motion pending before the Court.

**A.     Joseph A. Waxse and Terracon Consultants**

Joseph A. Waxse is an engineer with Terracon Consultants, Inc., a geotechnical engineering firm. Terracon was a sub-contractor engaged by A.H. Beck in the course of A.H. Beck's remediation work at the LaShip site.[3] Terracon conducted Cone Penetrometer Testing ("CPT") to measure soil strength and compressability and to assess the soil type in areas where HBI had allegedly installed soil-mixed columns.[4] Terracon was also asked to design a new geotechnical foundation plan based on the results of the CPT and other information.[5]

**B.     The Court's August 13, 2013 Ruling**

In their initial expert disclosures pursuant to Federal Rule of Civil Procedure 26, Plaintiffs designated Mr. Waxse as a Rule 26(a)(2)(C) expert.[6] On July 2, 2013, Defendant filed a motion *in limine*, asserting that Mr. Waxse, as well as other witnesses, should have been designated as Rule

---

[2] *See, e.g.*, Rec. Doc. 193 at pp. 2–6.

[3] Rec. Doc. 218-2, LaShip, LLC and Terrebone Port Commission's Supplemental Expert Disclosures Pursuant to Rule 26(a)(2), at p. 5.

[4] *Id.* The Court says that the areas allegedly contained soil-mixed columns because Mr. Waxse testified that he was told where to conduct the CPTs by someone from LaShip.

[5] *Id.*

[6] Rec. Doc. 125-2,  LaShip, LLC and Terrebone Port Commission's Expert Disclosures Pursuant to Rule 26(a)(2), at pp. 2–3.

26(a)(2)(B) experts and required to disclose expert reports.[7] Alternatively, Defendant contended that

Plaintiffs' disclosures regarding Mr. Waxse and the other 26(a)(2)(C) witnesses were inadequate.[8]

On August 13, 2013, the Court ruled on Defendant's motion *in limine*, granting the motion

in part and denying in part.[9] The Court found that Mr. Waxse was properly designated as a Rule

26(a)(2)(C) expert, but ordered Plaintiffs to supplement their disclosure.[10]

The Court's finding that Mr. Waxse was properly designated as a Rule 26(a)(2)(C) expert

was based on the specific information provided to the Court at that time. Relying on the First

Circuit's opinion in *Downey v. Bob's Discount Furniture Holdings, Inc.*,[11] the Court explained in

addressing the proposed testimony of Joseph Waxse, as well as that of Ian Kolda, Robert Traylor,

and Roger Failmezger, as 26(a)(2)(C) witnesses:

> Plaintiffs have outlined the work the contracting companies of the Witnesses were engaged
> to perform, and how the Witnesses' testimonies will be based on their personal knowledge
> and own tests conducted. Moreover, as Plaintiffs have pointed out, there is no evidence of
> an expert fee arrangement between these Witnesses and Plaintiffs. Likewise, there is no
> evidence that the Witnesses intend to rely on anyone else's opinions in their testimony at
> trial. As such, it appears that the Witnesses' participation in this matter was 'not retained or
> specially employed in connection with the litigation, and [their] opinion[s] about causation
> are premised on their personal knowledge and observations made in the course of treatment'
> and 'the expert[s] [are] part of the ongoing sequence of events and arrives at his causation
> opinion during treatment,' and therefore not within the ambit of Rule 26(a)(2)(B).[12]

---

[7]  Rec. Doc. 125.

[8]  *Id.*

[9]  Rec. Doc. 137 at p. 1.

[10]  *Id.* at p. 19.

[11]  633 F.3d 1 (1st Cir. 2011).

[12]  Rec. Doc. 137 at pp.15–16 (quoting *Downey*, 633 F.3d at 7).

The Court stated that "as long as their testimony at trial is confined to their personal knowledge, they are not Rule 26(a)(2)(B) witnesses,"[13] and concluded that "[f]or all these reasons, the Court finds that Rule 26(a)(2)(B) is not applicable to the Witnesses, and instead the Witnesses are governed by Rule 26(a)(2)(C)."[14]

For the purposes of the pending motion, the Court now notes that in the briefs regarding Defendant's motion *in limine* and the Court's opinion, the status of these witnesses was addressed as a group of contractors, who were engaged to perform components of the same project. There was relatively little detail on the specific knowledge and testimony of the witnesses individually. Now, the Court has more information.

**C.    *Mr. Waxse's Testimony at  Trial***

As part of his testimony at trial on November 1, 2013, Mr. Waxse stated that he was asked to develop a repair design for Phase II, the bulkhead area of Plaintiffs' shipbuilding facility. In developing a design, he reviewed the CPT results, which showed variability in the consistency of what he understood to be soil-mixed columns. Based on the CPT results, Mr. Waxse decided that if it were unknown whether the soil-mixed columns were continuous enough to perform in the intended manner, then the prudent thing would be to replace them. His repair design called for a new line of grout column piles in a continuous secant wall, which would be similar to the original secant wall made with soil-mixed columns. Mr. Waxse believed a new wall was necessary because he could not determine where the soil-mixed columns had strength and where they did not.

---

[13]  *Id.* at p. 17.

[14]  *Id.*

Mr. Waxse further testified that in addition to the CPT results, he also relied on or considered information from Derek Bascle, a La Ship employee, indicating that core testing had revealed that about 20% of the HBI soil-mixed columns were defective. Mr. Waxse never saw the results of the core testing and never witnessed the core testing as it was being conducted.

Additionally, Mr. Waxse confirmed that he never conducted more exhaustive subsurface exploration and finite element modeling, which potentially could have yielded a less extensive remedial program.

Finally, Mr. Waxse explained that his estimate with respect to Phase II was developed in response to an email from Brian Engeron, in-house counsel for LaShip, and Mr. Waxse was aware that his estimate would be used for litigation purposes. According to Mr. Waxse, the Phase II estimate was not a design plan and more work would need to be done before a design plan could be stamped.

At trial, HBI objected to and moved to strike the testimony by Mr. Waxse relating to Phase II. The Court allowed the parties to file supplemental briefs and to identify specific testimony that should be stricken.[15]

## II. Parties' Arguments

### A.   *Defendant's Argument in Support*

Defendant contends that this testimony should be stricken because it (1) exceeds the scope of LaShip's disclosure of Mr. Waxse as a Rule 26(a)(2)(C) expert; (2) renders improper opinion testimony based not only on Mr. Waxse's personal knowledge but also on the oral representations

---

[15]  Rec. Doc. 218 at p. 1, n. 1. The testimony that Defendant moves to strike is cited in Rec. Doc. 218-1 at 100:4–100:15, 101:19–102:12, 103:2–104:11, 131:23–149:8, 152:24–153:25, and 154:22–159:2.

of Derek Bascle regarding the condition of HBI's soil-mixed columns; and (3) renders improper opinion testimony as Mr. Waxse was not qualified as an expert witness.[16]

**B.     *Plaintiffs' Argument in Opposition***

In response to Defendant's objection, Plaintiffs aver that "[t]he testimony of Mr. Waxse is proper 26(a)(2)(C) testimony"[17] and that "Waxse's testimony at trial was directly in line with [Plaintiff's] disclosure."[18] Plaintiffs further contend that Mr. Waxse, as a Rule 26(a)(2)(C) witness, "may provide testimony at trial under Federal Rules of Evidence 702, 703, or 705,"[19] and may "rely upon otherwise inadmissible evidence in forming his evaluation and analysis."[20] Addressing Defendant's third argument, Plaintiffs assert:

> It was clear at all times that the witness was being offered as a 26(a)(2)(C) witness, from the prior disclosures, the offerings of counsel during trial, and the witness' testimony itself. Waxse specifically stated that he was present to offer fact testimony that may include technical or expert testimony given his expertise in his field, and the testimony regarding his qualifications, experience, and training, clearly illustrates that he was qualified to give [the] same.[21]

---

[16]  *Id.* at pp.1–2.

[17]  Rec. Doc. 221 at p. 10.

[18]  *Id.* at p. 11.

[19]  *Id.* at p. 8.

[20]  *Id.* at p. 7.

[21]  *Id.* p. 14.

**III. Law and Analysis**

A.   *The Court's Duty to Reconsider Interlocutory Decisions*

The Fifth Circuit has instructed in *Guillory v. Domtar Industries, Inc.*[22] and *Xerox Corp. v. Genmoora Corp.*[23] that a district court has a duty to reconsider its interlocutory decisions, including those related to *motions in limine*. The Fifth Circuit has suggested that "the duty to reconsider a ruling is triggered when the court receives positive proof that its prior ruling was erroneous."[24] In *Guillory*, the district court had denied plaintiff's motion *in limine* to exclude models used by defendant's expert witness on the basis of a *Daubert* objection.[25] At trial, after hearing some of the expert's testimony and learning more specifics about the model, the court then decided to exclude the model.[26] The Fifth Circuit held that "the court properly discharged its duty to reconsider its prior ruling upon realizing that it was made in error."[27] It further concluded that the defendant "cannot claim prejudice from the timing of the court's reconsideration"—that is, during trial.[28]

As this trial progressed, the Court received additional information regarding Plaintiffs' 26(a)(2)(C) witnesses, the scope of their individual testimony, and the information they relied upon in forming their opinions. Therefore, while the Court understands that the parties have relied upon

---

[22]   95 F.2d 1320 (5th Cir. 1996).

[23]    888 F.2d 345 (5th Cir. 1989).

[24]   *Guillory*, 95 F.2d at 1332; *see also Xerox*, 888 F.2d at 356.

[25]   *See Guillory*, 95 F.3d at 1329–30.

[26]   *See id.* at 1330.

[27]   *Id.* at 1332.

[28]   *Id.*

its August 13, 2013 ruling in shaping their trial strategies, the Court is also cognizant of its ongoing duty under *Guillory* and *Xerox*.

**B.      Testimony by Expert Witnesses Disclosed Pursuant to Rule 26(a)(2)(C)**

     *1.      Information Relied Upon by 26(a)(2)(C) Expert Witnesses*

As a preliminary matter, the Court finds it necessary to address a misunderstanding regarding the scope of testimony provided by Rule 26(a)(2)(C) witnesses. In the Court's prior order, the Court stated that "as long as their testimony at trial is confined to their personal knowledge, they are not Rule 26(a)(2)(B) witnesses."[29]

The Court's statement that Rule 26(a)(2)(C) witnesses' testimony would be "confined to their personal knowledge" was based on the information that was disclosed to the Court about the specific witnesses at the time. In their brief, Plaintiffs had explained to the Court that the witnesses at issue had "first-hand factual knowledge having visited the site, performed their own inspections and analyses, and formulated their plans, bids, and estimates based on their first-hand interaction with the land and existing structures."[30] Plaintiffs' representation that the witnesses' testimony would be premised upon personal knowledge was one factor in determining that the witnesses were 26(a)(2)(C) witnesses.

The Court's opinion should *not* be construed as finding that all 26(a)(2)(C) witnesses can only offer testimony based on their personal knowledge. Indeed, 26(a)(2)(C) envisions that experts not providing a report can "present evidence under Federal Rule of Evidence 702, 703, or 705."[31]

---

[29] *Id.* at p. 17.

[30] Rec. Doc. 127 at p. 4.

[31] Fed. R. Civ. Pro. 26(a)(2)(C).

Rule 703, in turn, provides that "an expert may base an opinion on facts or data in the case that the expert *has been made aware of* or personally observed."[32] It is not necessary that the underlying facts and data themselves be admissible.[33] Because there is relatively little case law on 26(a)(2)(C), the Court wants to be sure that going forward its prior opinion in this case is not construed to require, or to understand, that 26(a)(2)(C) witnesses only testify to their personal knowledge.

2.      *Scope of Testimony by 26(a)(2)(C) Expert Witnesses*

Although the Court finds that generally 26(a)(2)(C) witnesses may testify beyond their personal knowledge, there are still limits to the scope of a 26(a)(2)(C) witness's testimony.  A 26(a)(2)(C) witness's opinion must be based on facts or data obtained or observed in the course of the sequence of events giving rise to the litigation.[34] While the Fifth Circuit has not directly addressed this issue, other circuits have held someone may be a witness not required to produce a report as to portions of his testimony and simultaneously deemed a retained or specially employed expert who is subject to Rule 26(a)(2)(B) as to other portions.[35] These cases relate to treating physicians, the subject of most of the 26(a)(2)(C) caselaw, and distinguish between opinions that the treating physician arrives at in the course of treatment, and opinions that the treating physician arrives at after treatment, for the purposes of litigation.

---

[32]  Fed. R. Evid. 703 (emphasis added).

[33]  *See id.*

[34]  *See, e.g.*, *Downey*, 633 F.3d at 6 (holding that a witness was properly designated as a 26(a)(2)(C) witness where "his opinion testimony arises not from his enlistment as an expert but, rather, from his ground-level involvement in the events giving rise to the litigation"); *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011) (holding that a treating physician does not have to produce an expert report "to the extent that his opinions were formed during the course of treatment").

[35]  *See, e.g., Goodman*, 644 F.3d at 826 (holding that only certain opinions required a report pursuant to 26(a)(2)(B)).

For example, in *Goodman v. Staples The Office Superstore, LLC*, the Ninth Circuit addressed a situation in which a plaintiff in a personal injury case "retained a number of her treating physicians to render expert testimony beyond the scope of the treatment rendered."[36] In forming their additional opinions, the physicians "reviewed information provided by [plaintiff's] attorney that they hadn't reviewed during the course of treatment."[37] The Court held that "those doctors fell outside the scope of the 'treating physician exception' insofar as their additional opinions are concerned," and that therefore "Rule 26(a)(2)(B) required disclosure of expert reports."[38]

Similarly, in *Meyers v. National Railroad Passenger Corp. (Amtrak)*,[39] the Seventh Circuit, assessing whether Rule 26 required an expert report, looked to whether the opinions at issue were developed in the course of a physician's treatment. The court held that "a treating physician who is offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment, should be deemed to be one 'retained or specially employed to provide expert testimony in the case' and thus is required to submit an expert report."[40]

Finally, in *Fielden v. CSX Transportation, Inc.*,[41] the Sixth Circuit explained that courts have not required a report when a treating physician testifies "within a permissive core on issues

---

[36]   *Id.*

[37]   *Id.*

[38]   *Id.*

[39]   619 F.3d 729 (7th Cir. 2010).

[40]   *Id.* at 734–35.

[41]   482 F.3d 866 (6th Cir. 2007).

pertaining to treatment."[42] In *Fielden*, the Sixth Circuit held that the treating physician at issue did not have to produce a report where evidence showed that the physician formed his opinion during the course of treatment, rather than at the request of counsel.[43]

The Court would also point out that in its opposition brief to Defendant's motion *in limine*, Plaintiffs acknowledged that an expert can be  a 26(a)(2)(B) with respect to a certain opinion and a 26(a)(2)(C) expert with respect to another, stating:

> Plaintiffs acknowledge the line of cases indicating that an expert may be both a Section (B) and a Section (C) expert in the same case, depending on the nature of actual testimony being offered. Here, these witnesses will simply not cross the line into the type of testimony for which a report would be required. . . . Here, the witnesses will not comment on causation, will not address hypotheticals, and will not rely on information outside the scope of the testing that they themselves performed.[44]

### 3.  Disclosure Required for Rule 26(a)(2)(C) Expert Witnesses

Another limit on testimony by 26(a)(2)(C) witnesses relates to disclosure. Rule 26(a)(2)(C) requires a disclosure stating (1) "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705," and (2) "a summary of the facts and opinions to which the witness is expected to testify."[45]

### 4.  Application of Rule 26(a)(2)(C) to Mr. Waxse

As explained above, the Federal Rules of Civil Procedure and the Federal Rules of Evidence do not require that a 26(a)(2)(C) expert's testimony be limited to his personal knowledge. However, in this case, Plaintiffs affirmatively represented that Mr. Waxse's testimony would be limited to his

---

[42]  *Id.* at 871.

[43]  *Id.* at 869.

[44]  Rec. Doc. 127 at p. 14, n. 23.

[45]  Fed. R. Civ. Pro. 26(a)(2)(C).

first-hand knowledge. The question now becomes what did Plaintiffs disclose to Defendants after

the Court's August 13, 2013 order and was it sufficient to meet the requirements of 26(a)(2)(C). As

stated above, under Rule 26(a)(2)(C), a party must disclose "the subject matter on which the witness

is expected to present evidence under Federal Rule of Evidence 702, 703, or 705" and "a summary

of the facts and opinions to which the witness is expected to testify."

> In its opposition to HBI's motion *in limine*, LaShip represented that:
>
> The contractor witnesses were asked to provide bids and estimates for designing and
> constructing a safe foundation system, without regard to HBI's work or issues of HBI's fault.
> That is what they did and are continuing to do. They have first-hand factual knowledge
> having visited the site, performed their own inspections and analyses, and formulated their
> plans, bids, and estimates based on their first-hand interaction with the land and existing
> structures . . . . *Theirs is not speculative opinion evidence based on facts handed to them by
> other parties and formulated for the purposes of the litigation;* it is fact-based testimony
> regarding work being performed now to install a new foundation so that the business of the
> shipyard can proceed with as little disruption as possible.[46]

In their supplemental disclosure, Plaintiffs reported that Mr. Waxse would testify "regarding the

procedures and methodology utilized in performing CPT and other testing and monitoring," and

regarding "the proposed plan, design, and cost, as well as the geotechnical analysis supporting the

new foundation."[47] However, the disclosure did not specifically address whether Mr. Waxse would

rely on outside information, as opposed to personal knowledge.

Although Plaintiffs provided no information on outside sources used by Mr. Waxse prior to

trial (and the Court is not convinced that, had Plaintiffs not represented otherwise, that they had to),

at trial, Mr. Waxse explained that in addition to CPT results, he also considered information from

---

[46] Rec. Doc. 127 at p. 4.

[47] Rec. Doc. 218-2, LaShip, LLC and Terrebone Port Commission's Supplemental Expert Disclosures Pursuant
to Rule 26(a)(2), at p. 5.

Derek Bascle, a LaShip employee, indicating that 20% of the HBI soil-mixed columns were defective.

There may also be a disclosure problem with respect to Mr. Waxse's testimony regarding HBI's work and his recommendation to build an entirely new foundation system. In their opposition to HBI's motion *in limine*, LaShip and TPC represented that:

> Terracon will not be testifying as to the work performed by HBI or causation. Rather Terracon will provide fact-based testimony regarding the results of the CPT it (Terracon) performed, as well as the proposed plan and cost of its geotechnical design for the foundation system. Again, [Peter] Nicholson will testify for Plaintiffs as to the necessity of wholesale disregard for any structural capacity or load bearing value assignable to the HBI work . . . .[48]

Additionally, in its supplemental disclosure, Plaintiffs did not state that Mr. Waxse would offer an opinion on Defendant's work or the need for "wholesale disregard" of the HBI soil-mixed columns.[49]

At trial, however, Mr. Waxse, a representative of Terracon, testified to the contrary. He testified that, based on the CPT results, he decided that if it were unknown whether the soil-mixed columns were continuous enough to perform in the intended manner, then the prudent thing would be to replace them. With respect to Phase II, Mr. Waxse's repair design called for a a new line of grout column piles in a continuous secant wall, which would be similar to the original secant wall made with soil-mixed columns. Mr. Waxse believed a new wall was necessary because he could not determine where the soil cement columns had strength and where they did not.

---

[48] Rec. Doc. 127 at p. 9.

[49] *See* Rec. Doc. 218-2, LaShip, LLC and Terrebone Port Commission's Supplemental Expert Disclosures Pursuant to Rule 26(a)(2), at p. 5.

Thus, it appears to the Court that despite Plaintiffs' initial representation, Mr. Waxse did testify regarding the work performed by HBI, and that Mr. Waxse did offer an opinion as to whether he needed to disregard any structural capacity provided by the HBI columns.

Furthermore, testimony elicited at trial as well as documents made available to the Court during trial demonstrate Mr. Waxse should have been designated as a 26(a)(2)(B) witness with respect to Phase II. As referenced above, his recommendations regarding Phase II are not analogous to opinions that the treating physician arrives at in the course of treatment; rather, they are more similar to opinions that the treating physician arrives at after treatment, for the purposes of litigation.

A June 20, 2013 email chain among Brian Engeron, LaShip's in-house counsel, Abe Hunt, another representative of LaShip, August Beck and Ian Kolda at A.H. Beck, Mr. Waxse, and others illustrates Mr. Waxse's Phase II estimate was formulated for the purposes of litigation and was not part of the normal remediation work. At 10:17 am, Mr. Engeron emailed Mr. Hunt asking whether A.H. Beck had produced a global remediation figure, saying: "Please note that we *need that number for Pete's expert report which is due tomorrow* by COB. If we do not have a documentable, supportable figure for 'all' of the remediation that 'could' be performed because of HBI's defective work, we will have to waive those damages."[50] At 10:40 am, Mr. Hunt forwarded the request to Mr. Beck.[51] An hour later, Mr. Beck wrote to Mr. Kolda, copying Mr. Waxse, explaining that "I realize we do not have all the information or answers we need to do this, because we need further engineering analysis, but *we need to go ahead and come up with something so that Chouest is*

---

[50] Rec. Doc. 180-2 at p. 4.

[51] *Id.* (emphasis added).

*covered best we can*."[52] In response to this request, at 2:07 pm, Mr. Waxse emailed a "preliminary estimate of what it would take to replace their structural capacity with cement grout columns" at the bulkhead, or Phase II.[53] At 5:42 pm, Mr. Kolda forwarded to Mr. Hunt "a rough order of magnitude budgetary estimate to replace the cement stabilized soil system you have in place along your bulkhead."[54] The Court notes that this correspondence took place just one day before the deadline for Plaintiffs to file their expert reports.[55]

At trial, Mr. Waxse testified that his Phase II estimate was not a remediation design but was a figure prepared for litigation. Mr. Waxse confirmed that he knew that his preliminary estimate for Phase II was being used for litigation purposes. He further acknowledged that his estimate was not a design, that no design plans were stamped, and that a lot more work would have to be done before design plans could be stamped.

In light of this evidence, it is apparent to the Court that Mr. Waxse's opinions regarding Phase II were not opinions he arrived at in the course of repairing the foundation work at the LaShip site. Rather, they were opinions rendered specifically for litigation.

Therefore, the Court finds that Mr. Waxse's testimony regarding Phase II runs afoul of Rule 26(a)(2)'s disclosure requirements in three ways. First, Plaintiffs represented certain limits to Mr. Waxse's testimony—namely, that Mr. Waxse would only testify based on personal knowledge. At trial, it was revealed he considered information provided by Derek Bascle, which was not disclosed

---

[52] *Id.* at p. 3 (emphasis added). Chouest refers to Edison Chouest Offshore. LaShip, LLC is part of the Chouest family of companies.

[53] *Id.* at pp. 2–3.

[54] *Id.* at p. 2.

[55] *See* Rec. Doc. 103, "Amended Scheduling Order."

in advance. The Court acknowledges, however, that a 26(a)(2)(C) expert witness may rely on information provided by others pursuant to 703. The Court further recognizes that Defendant had an opportunity to thoroughly cross examine Mr. Waxse on this matter. Second, Plaintiffs represented the Mr. Waxse would not testify regarding HBI's work or the need for "wholesale disregard" of the HBI columns, when in fact, he did offer such an opinion. Finally, Mr. Waxse's Phase II testimony was not developed during the sequence of events giving rise to litigation; rather, it was specifically solicited for litigation purposes, as the evidence now reveals. Accordingly, the Court must determine what sanctions, if any, are appropriate under Rule 37.

## C.        *Sanctions Pursuant to Rule 37*

Federal Rule of Civil Procedure 37(c)(1) provides that "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless."[56]

In *Texas A&M Research Foundation v. Magna Transportation, Inc.*,[57] the Fifth Circuit identified four factors that a court should consider in determining whether a violation of Rule 26 is substantially justified or harmless: "(1) the importance of the evidence; (2) the prejudice to the opposing party if the evidence is included; (3) the possibility of curing such prejudice by a continuance; and (4) the party's explanation for its failure to disclose."[58]

---

[56] Fed. R. Civ. Pro. 37(c)(1).

[57]   338 F.3d 394 (5th Cir. 2003).

[58] *Id.* at 402.

16

1.      *The Importance of the Evidence*

The Court finds that Mr. Waxse's testimony regarding his Phase II estimate and evaluation is important, as it goes to the damages Plaintiffs have incurred with respect to Phase II. Therefore, the first factor weighs in favor of allowing the evidence.

2.      *Prejudice to the Opposing Party if the Evidence is Included*

Defendant has averred that it would be highly prejudicial to include the testimony of Mr. Waxse regarding Phase II:

> Without a report and with no information about what Mr. Waxse might say, HBI was precluded from using its own experts to respond to whatever Mr. Waxse's opinions might be. Had the plaintiffs properly hired an expert and provided a report, HBI would have had the full and fair opportunity to identify any deficiencies in Mr. Waxse's approach, as well as to explore alternative approaches to actually repair—and not replace—any allegedly defective work. To allow Mr. Waxse to testify regarding a preliminary estimate that is at least partially based on information that was beyond his personal knowledge and without preparing a full expert report is highly prejudicial and should not be permitted.[59]

In evaluating any prejudice to Defendant, the Court is cognizant of Plaintiffs' prior representations regarding Mr. Waxse's testimony. As explained above, in its opposition to HBI's motion *in limine*, LaShip and TPC stated that Mr. Waxse would testify based on his own first-hand knowledge.[60] It was later revealed that Mr. Waxse considered information provided by Derek Bascle. However, a 26(a)(2)(C) witness can rely on information provided by others.[61] Furthermore, Defendant had an opportunity to cross examine Mr. Waxse on Mr. Bascle's statements. Therefore, the fact that Mr. Waxse relied on information provided by others, alone, does not unduly prejudice Defendant.

---

[59] Rec. Doc. 218 at p. 9.

[60] Rec. Doc. 127 at p. 4.

[61] *See supra* Section III.B.1.

Plaintiffs also represented that "Terracon will not be testifying as to the work performed by HBI or causation. Rather Terracon will provide fact-based testimony regarding the results of the CPT it (Terracon) performed, as well as the proposed plan and cost of its geotechnical design for the foundation system. Again, [Peter] Nicholson will testify for Plaintiffs as to the necessity of wholesale disregard for any structural capacity or load bearing value assignable to the HBI work . . . ."[62] Whether Defendant's work was deficient and whether Plaintiffs needed to "disregard" any structural capacity are crucial questions going to breach, causation, and damages. Plaintiffs specifically indicated that Mr. Waxse would not be offering testimony on these issues, when in fact, he did so at trial. The fact that Plaintiffs failed to disclose Mr. Waxse's opinion on that matter may be prejudicial to Defendant.

The Court is aware that HBI had an opportunity to depose Mr. Waxse on October 18, 2013. However, at deposition, Mr. Waxse affirmed that he had not been asked to formulate opinions about the quality of Hayward Baker's work.[63] He further acknowledged that he had not been asked to formulate any opinion about whether the bulkhead foundation system needs to be replaced.[64]

Accordingly, the Court finds that the second factor weighs against allowing the evidence in.

3.    *The Possibility of Curing Such Prejudice by a Continuance*

As these issues came to light on the fifth day of trial, a continuance would be highly disruptive. Therefore, the third factor weighs against allowing the testimony into evidence.

---

[62] Rec. Doc. 127 at p. 9.

[63] Rec. Doc. 218-4, Deposition of Joseph A. Waxse, dated Oct. 18, 2013, at p. 3.

[64] *Id.* at p. 5.

> ### 4.   The Party's Explanation for Its Failure to Disclose

Plaintiffs' explanation is that Plaintiffs disclosed Mr. Waxse as a 26(a)(2)(C) witness.[65] However, at trial, the Court was made aware of emails involving Mr. Waxse and LaShip's in-house counsel indicating that with respect to Phase II, Mr. Waxse's opinion was solicited for litigation purposes, and not merely as part of the ongoing remediation. Accordingly, Plaintiffs' explanation that Mr. Waxse is a 26(a)(2)(C) witness and that its disclosure was sufficient is both misleading and unconvincing, and so the Court finds that the fourth factor weighs against Plaintiffs.

> ### 5.   Conclusions with Respect to 37(c)(1)

Taking these factors together, the Court finds that the testimony of Mr. Waxse regarding Phase II should be excluded.

In finding that exclusion is appropriate, the Court notes that the instant case is distinguishable from *Goodman v. Staples*, in which Ninth Circuit held "as a matter of discretion, that [Plaintiff] should be allowed to rectify her error by disclosing reports for her treating physicians."[66] First, in *Goodman*, the lack of disclosure came up on a motion for summary judgment,[67] not during the course of trial, as here. Second, the plaintiff in *Goodman* had not made any affirmatively incorrect representations regarding the nature of the expert's testimony as we have here.[68] *Goodman* was not a situation of evolving facts; it was a situation in which it was unclear how to apply the law

---

[65] *See* Rec. Doc. 221 at p. 10 ("Plaintiffs properly disclosed Waxse as a Rule 26(a)(2)(C) witness in their Rule 26 Expert disclosures initially in this case. The Court ordered Plaintiffs to supplement their disclosures with more specific identification of the subject matter of each of the prospective witnesses' testimony, which Plaintiffs did in accordance with the Court's deadline.").

[66] *Goodman*, 644 F.3d at 826.

[67] *See id.* at 822.

[68] *See id.* 820–21.

to a particular set of facts. In the case before the Court, however, new information regarding the context and scope of Mr. Waxse's testimony was revealed to the Court on the fifth day of trial.

Here, considering the evidence revealed at trial demonstrates that, at least with respect to his testimony regarding Phase II, Mr. Waxse should have filed a report pursuant to Rule 26(a)(2)(B), the Court finds that exclusion of the portion of Mr. Waxse's testimony identified by Defendant is the proper remedy.

### IV. Conclusion

Because evidence revealed at trial demonstrates that, at least with respect to his testimony regarding Phase II, Mr. Waxse should have filed a report pursuant to pursuant to Rule 26(a)(2)(B),

**IT IS HEREBY ORDERED** that Defendant's motion to exclude certain testimony from Joseph Waxse is **GRANTED.**

**IT IS FURTHER ORDERED** the testimony of Joseph Waxse regarding Phase II and corresponding to Record Document 218-1 at 100:4–100:15, 101:19–102:12, 103:2–104:11, 131:23–149:8, 152:24–153:25, and 154:22–159:2 is stricken from the record.

**NEW ORLEANS, LOUISIANA** this  13th  day of November, 2013.

*Nannette Jolivette Brown*
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**